UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,         CASE NUMBER: 10-20772
                                    HONORABLE VICTORIA A. ROBERTS
                                    Magistrate Judge Mark A. Randon

v.

SHAKEVIUS STEPHENS,

        Defendant.
_____/

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

       This matter is before the Court on Defendant Shakevius Stephens' Motion to Suppress Oral Statements. (Doc. # 10). The Court referred the matter to Magistrate Judge Mark A. Randon for Report and Recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1)(A). Magistrate Judge Randon recommends the Court grant in part and deny in part Defendant's motion. Defendant objects; the Government responds to Defendant's objection.

       The Court **OVERRULES** Defendant's objection and **ADOPTS** the Magistrate's R & R. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress.

**II.    STANDARD OF REVIEW**

       This Court reviews *de novo* any part of the magistrate's recommendation on a

1

dispositive motion that is properly objected to. FED. R. CIV. P. 72(b)(3). Motions to suppress evidence in a criminal case are treated as dispositive. *See* 28 U.S.C. § 636(b)(1)(A). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

### III.   BACKGROUND AND PROCEDURAL HISTORY

On June 29, 2010, Defendant Shakevius Stephens was arrested at the United States-Canada border while attempting to enter the United States; officers from the Bureau of Customs and Border Protection ("CBP") discovered approximately 18,000 pills containing MDMA, or "ecstacy," hidden in the rear bumper of her car. Later that day, Defendant was questioned by Special Agents Scott Weigman and Brian Helmerson from the Department of Homeland Security ("DHS"), and made incriminatory statements she now seeks to suppress.

Defendant signed a "statement of rights" form (referred to here as "*Miranda* form" or "acknowledgment form") acknowledging the agents read, and she understood, her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) ("*Miranda* rights"). These rights were listed on the *Miranda* form, which the agents read to Defendant and gave to her to read. She refused, however, to sign a waiver of her *Miranda* rights. Defendant's version of how the agents' questioning unfolded, and specifically, of when the *Miranda* form was read and the acknowledgment executed, varies drastically from the agents' version. The R & R sets forth the divergent accounts with sufficient specificity; that discussion is incorporated by reference. (*See* Doc. # 29, R & R at 3-6).

On March 2, 2011, Defendant moved to suppress her statements to Weigman and Helmerson. (Doc. # 10). She argued she invoked her right to remain silent, but the agents continued to question her until she finally gave an "involuntary and coerced" statement. (*Id.* at 2). She requested an evidentiary hearing. This Court referred the matter to Magistrate Judge Randon. The magistrate held a hearing on April 12, 2011; Weigman, Helmerson, and Defendant testified.

After the suppression hearing, Defendant and the Government filed supplemental briefs. (Doc. #s 22, 25). Defendant said she invoked her rights to remain silent and asked for an attorney, but the agents continued the interrogation, in violation of *Miranda*. She said the agents' testimony reveals the interrogation began at 5:30 pm, and ended at 6:00 pm, the time at which the record indicates she signed the *Miranda* acknowledgment form. Additionally, Defendant stated the agents coerced her to make a statement with improper promises of leniency and that she could see her children once she answered their questions.

On June 13, 2011, Magistrate Judge Randon submitted a R & R recommending that the Court grant in part and deny in part Defendant's motion. He credited the testimony of Weigman and Helmerson over Defendant. He found that *Miranda* warnings preceded the majority of the agents' interrogation. He said the agents properly asked Defendant "booking questions" to complete a Personal History Report ("DEA Form 202") before reading the *Miranda* form. Magistrate Judge Randon determined, however, that the agents violated *Miranda* by interrogating Defendant about what she planned to do upon entering the United States before reading the form; he said that question "went beyond the boundary of a biographical question, was

3

investigatory in nature and was reasonably likely to elicit an incriminating response – requiring advanced *Miranda* warnings." (R & R at 11). He recommends that the Court suppress her answer to that question. The magistrate also found that Defendant did not invoke her rights to an attorney or to remain silent and that her statements were freely and voluntarily made.

For purposes of Defendant's objection to Magistrate Judge Randon's recommendation, the only issue is whether the DHS agents read Defendant her *Miranda* rights before they interrogated her regarding illegal activities.

## IV.  OBJECTION

Defendant objects to Magistrate Judge Randon's factual determination that the DHS agents' interrogation began at approximately 6:00 pm, after they read Defendant her *Miranda* rights. She says the evidence shows the agents read Defendant her rights after the interrogation ended, and her statements should be suppressed because the agents violated her Fifth and Fourteenth Amendment rights.

## V.  ANALYSIS

"To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in *Miranda* 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" *Florida v. Powell*, 130 S.Ct. 1195, 1203 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)).

Under *Miranda*, law enforcement must warn a suspect, before custodial questioning, that she has the right to remain silent, anything she says can be used

against her in a court of law, she has the right to the presence of an attorney, and if she cannot afford an attorney, one will be provided to her before questioning if she desires. *Id.* (citing *Miranda*, 384 U.S. at 479). "Unless a suspect 'voluntarily, knowingly and intelligently' waives these rights...any incriminating responses to questioning may not be introduced into evidence in the prosecution's case in chief in a subsequent criminal proceeding." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda*, 384 U.S. at 444). "For a defendant's statements during a custodial interrogation to be admissible, the government must demonstrate by a preponderance of the evidence that the defendant waived [her] *Miranda* rights prior to questioning." *United States v. Kellogg*, 306 Fed.Appx. 916, 922 (6th Cir. 2009).

Defendant's sole objection to the R & R focuses on the magistrate's determination that Special Agents Weigman and Helmerson read Defendant her *Miranda* rights before interrogating her. She says the agents interrogated her before they read her *Miranda* rights and she signed the acknowledgment form. She does not object to the magistrate's conclusion that she (1) did not ask to have an attorney present before the interrogation began and (2) was not coerced into giving a statement by threats that she would not see her children until she answered the agents' questions, and thus, impliedly voluntarily waived her rights by speaking to the agents.

Nor does Defendant challenge the magistrate's credibility determination that Weigman and Helmerson testified truthfully and were more believable than Defendant. In fact, her objection is premised on the assumption that the agents testified truthfully. Neither party objects to the magistrate's conclusion that Defendant's response to the agents' question about what she planned to do when she entered the United States is

inadmissible because they asked it before reading Defendant her *Miranda* rights. Upon review, the Court agrees with the R & R's resolution of these matters and having received no specific objections, the Court adopts these findings without further discussion.

The Court agrees with Magistrate Judge Randon that the Government established Weigman read Defendant her *Miranda* rights, and Defendant signed the acknowledgment form, before he and Helmerson interrogated her. Defendant says the evidence shows the agents did not begin asking interrogation questions at 6:00 pm as the Government claims. She points to the CBP Significant Incident Report and the CBP Log Sheet. (See Doc. # 31, Exhs. A and B). She says these documents establish that the interview ended at 6:00 pm, when the agents read Defendant her *Miranda* rights. However, these documents provide no basis to disturb the magistrate's factual findings. The incident report merely establishes that the questioning began around 5:30 pm. Its accuracy is substantiated by the time log, which places the start time at between 5:25 pm and 5:45 pm. Defendant testified the interview lasted "probably like an hour, hour and-a-half." (4/12/11 Tr.175). Similarly, Weigman testified that the interrogation lasted approximately one hour and Helmerson testified he believed it lasted between one hour and an hour and a half. Therefore, Defendant's admission and the DHS agents' testimony place the end time between 6:30 pm and 7:00 pm, as opposed to 6:00 pm like Defendant now claims.

Assuming the interview began at approximately 5:30 pm, as Defendant now claims (and as opposed to what she said at the suppression hearing), it is reasonable to conclude the agents spent approximately thirty minutes gathering Defendant's

biographical information before reading the *Miranda* form. Defendant does not dispute that these "routine booking questions" are not subject to the strictures of *Miranda*. *See Muniz*, 496 U.S. at 601.

Moreover, Weigman testified that 6:00 pm was the "approximate time" that Defendant signed the acknowledgment form. (4/12/11 Tr. 19). Defendant could have signed it several minutes before 6:00 pm. The agents could have read and explained Defendant's *Miranda* rights several minutes before that. Therefore, the fact that Defendant signed the form at approximately 6:00 pm does not refute the finding that the agents read it before interrogating Defendant about the ecstacy pills found in her car.

Weigman testified that it took the agents approximately twenty minutes to gather Defendant's biographical information; Helmerson testified that it took approximately 15 minutes to do so. Helmerson said it was a difficult interview because Defendant was uncooperative and it took some time to get answers from her. (*Id.* at 121). In addition, the Magistrate found, and Helmerson's notes from the interview reflect, that the agents asked Defendant what she planned to do in the United States, and received an answer to that question, before reading Defendant her *Miranda* rights. Helmerson testified that question was on the DEA Form 202, which is why the agents asked it before reading Defendant her *Miranda* rights. (*Id.* at 129). Under these circumstances, it is reasonable to conclude that the interrogation that followed began around 6:00 pm.

Defendant emphasizes that Weigman initially testified that the interview began somewhere close to 5:00 pm, lasted for less than an hour, and ended shortly after 6:00 pm. (*Id.* at 12-13). However, when confronted with the inconsistency between that testimony and Helmerson's notes, Weigman stated his memory of the time line had to

7

be "a little bit off" because he was certain that he did not question Defendant until after he read the *Miranda* form and she signed the acknowledgment. (*Id.* at 34-35). The magistrate found this testimony credible; the Court agrees that it is. It is supported by Helmerson's testimony, his interview notes (which chronologically detail the interview and place the *Miranda* warnings before most of the interrogation), the incident report, and the log sheet. The record demonstrates that, with the exception of one question, Weigman and Helmerson read Defendant her *Miranda* rights before interrogating her; the majority of the statements made during the interrogation are admissible.

## VI.   CONCLUSION

The Court **ADOPTS** the magistrate's R & R and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress.

Defendant's answer to the question regarding her plans upon entering the United States – that she was going to an address on Freud Street and to return the rental car-- is inadmissible. The remainder of the interview is admissible.

**IT IS ORDERED.**

 S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 12, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 12, 2011.

S/Carol A. Pinegar
Deputy Clerk